# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 17, 2013

# ELMI ABDULAHI ABDI v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2008-B-1061     Steve Dozier, Judge**

**No. M2012-02688-CCA-R3-PC - Filed November 18, 2013**

Elmi Abdulahi Abdi ("the Petitioner") was convicted by a Davidson County jury of attempted aggravated robbery, a Class C felony, and was sentenced to ten years in the Tennessee Department of Correction, consecutive to a previous sentence. The Petitioner filed for post-conviction relief. Following an evidentiary hearing, the post-conviction court denied his petition for post-conviction relief. The Petitioner now appeals, arguing that his counsel was ineffective for: (1) failing to compel the production of crime scene surveillance video; (2) failing to adequately challenge the admission of video clips of his interview with police; and (3) failing to file a timely motion for new trial. After a thorough review of the record and the applicable law, we hold that the Petitioner's trial counsel was deficient in failing to file a timely motion for new trial and that the Petitioner was presumptively prejudiced by that deficiency. Therefore, we grant the Petitioner a delayed appeal.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment
### of the Criminal Court Affirmed in Part, Reversed in Part

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Elaine Heard, Nashville, Tennessee, for the appellant, Almi Abdulahi Abdi.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; and Rachel Sobrero, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

A Davidson County jury convicted the Petitioner of attempted aggravated robbery, a Class C felony. The trial court sentenced the Petitioner as a Range II, multiple offender to ten years in the Tennessee Department of Correction. The trial court also determined that this sentence was to be served consecutively to a previous sentence. On direct appeal, this Court affirmed the judgment of the trial court. See State v. Elmi Abdulah Abdi, No. M2010-00277-CCA-R3-CD, 2011 WL 2570404, at *1 (Tenn. Crim. App. June 29, 2011), perm. app. denied (Tenn. Oct. 18, 2011). The summary of the relevant facts are set forth in this Court's opinion resolving the Petitioner's direct appeal:

A Davidson County grand jury indicted the defendant, Elmi Abdulahi Abdi, for attempted aggravated robbery, a Class C felony. The matter proceeded to trial on September 21 and 22, 2009.

The victim testified that on January 1, 2008, she was the front desk clerk at the Extended Stay America Hotel located at 2525 Elm Hill Pike, Nashville, Tennessee. On that day, she arrived at work at 7:00 a.m. Before she could remove money from the hotel's safe to put in her register for the day, she heard the door open and went to the front desk. The victim testified that the defendant was standing at the counter, wearing a stocking cap, a gray fleece jacket, and dark sunglasses. She said that he demanded that she give him all of the money. He had his hand in a pocket of his jacket, and she said that "he lifted his hand up towards my head like he had a gun." She told him that she had not taken the money out of the safe yet and showed him the empty register drawer. He demanded that she let him behind the counter and said, "I ought to kill you." The victim testified that after he said that, she began moving to the side door and then turned and ran through the back door. She said that she was afraid that he would shoot her in the back when she turned to run. She went up to the third floor, and knocked on a guest's door. The guests let her in, and they called the police. When the police arrived, she told them what happened. The following day, a detective at the Hermitage Precinct showed her a set of photographs. She identified a photograph of the defendant as the person who tried to rob her. She also identified the defendant in the courtroom.

On cross-examination, the victim denied that the man who tried to rob

her was black. She said that she recalled the description that she gave to the police but did not recall telling the police that the man was black.

On re-direct examination, the victim stated that she was "a hundred percent" certain that the defendant was the person who tried to rob her. She said that she would not describe the defendant as a black man.

Metropolitan Nashville Police Officer Geoffrey Thiede testified that he responded to an attempted robbery call at 2525 Elm Hill Pike on January 1, 2008. He spoke with the victim and filled out an incident report. He said that the description he recorded was "a generic description of a male black, approximately twenty-five to thirty years old, 5 [foot] 9 [inch], 185 pounds." Officer Thiede noted in his report that the suspect had "his left hand . . . in the pocket of the fleece jacket to possibly give [the victim] the inference that maybe he had a weapon in his hand."

On cross-examination, Officer Thiede agreed that the victim described the suspect as a black male. He further agreed that he indicated in his report that there was no weapon involved. He recalled that the victim told him that the hotel had video surveillance but that she did not have access to it. He did not know whether detectives followed up on the video surveillance.

Metropolitan Nashville Police Detective James Chastain testified that he prepared a photographic lineup including the defendant's photograph.

Metropolitan Nashville Police Detective Jeff Ball testified that he was the lead detective in this case. He spoke with the victim on January 2, 2008, and showed her a photographic lineup. She identified the defendant as the person who tried to rob her. He learned that the hotel had video surveillance, and the police collected a videotape from the hotel. Detective Ball testified that the Tech Support Unit viewed the videotape, but the attempted robbery was not captured on the videotape. He said that the police received an anonymous call that the defendant was at the Breckinridge Apartments on Plus Park Boulevard. The police arrested the defendant in that area. Detective Ball spoke to the defendant at the Hermitage Precinct. The defendant signed a rights waiver. He told the detective that he did not take any money and that it was his hand in his pocket. The defendant said he might have attempted it and that he was drunk. He explained that he lost his memory when he was drunk. Detective Ball said that he had a surveillance video from a business three to four miles away from the hotel that captured the defendant at 9:08 a.m.,

according to the time on the videotape. The detective said that, based on his investigation, the clock on the videotape was one hour off. The defendant identified himself in the video. The detective testified that the clothing worn by the defendant in the video matched the description given by the victim.

On cross-examination, Detective Ball agreed that the defendant never specifically said that he attempted to rob anyone at the hotel. The state recalled the victim, who testified that the defendant did not smell of alcohol, speech was not slurred like a drunk person, nor did he walk abnormally.

Following the close of proof and deliberations, the jury convicted the defendant of attempted aggravated robbery, a Class C felony. The trial court sentenced him as a Range II, multiple offender to serve ten years in the Tennessee Department of Correction, consecutive to Davidson County case number 2006-A-30. The defendant filed an untimely motion for new trial, which the trial court heard and denied.

In the interest of justice, this court granted the defendant's motion for waiver of the thirty-day limit for filing a notice of appeal. The defendant filed a notice of appeal on March 19, 2010.

Id. at *1-3.

In his appellate brief, the Petitioner argued that the evidence at trial was not sufficient, that the trial court erred in admitting video clips of his interview with police, and that the trial court erred in imposing consecutive sentencing.[1] This Court considered the Petitioner's sufficiency of the evidence and consecutive sentencing claims on the merits and denied relief on both bases. Id. at *3, *6. However, this Court held that, by filing an untimely motion for new trial, the Petitioner had "waived his argument that the trial court erred by admitting video of his interview with police." As a result, this Court declined to consider the issue. Id. at *4.

Subsequently, the Petitioner filed for post-conviction relief alleging ineffective assistance of counsel. At the post-conviction hearing, the Petitioner testified that he initially was arrested in the instant case in conjunction with two other charges which were subsequently severed. The Petitioner testified that his attorney ("Trial Counsel") "never

---

[1] To assist in the resolution of this proceeding, we take judicial notice of the appellate record from the Petitioner's prior direct appeal. See Tenn. R. App. P. 13(c); State v. Lawson, 291 S.W.3d 864, 869 (Tenn. 2009); State ex rel. Wilkerson v. Bomar, 376 S.W.2d 451, 453 (Tenn. 1964).

stopped" the admission of the video clips of his interview with police. He alleged that Trial Counsel never filed a motion to challenge the admission of the interview video and that she made no argument in front of the trial court regarding it. On cross-examination, however, the Petitioner admitted that he did remember that Trial Counsel had filed a motion in limine to challenge the admission of the interview video, which was denied prior to trial.

The Petitioner also testified that he asked Trial Counsel to obtain the hotel surveillance video. Although the Petitioner's testimony on this issue is somewhat unclear, we interpret his testimony to allege that, had the jury seen the surveillance video of the crime scene in which the Petitioner did not appear, the jury would not have convicted him.

Finally, the Petitioner testified that Trial Counsel was late in filing a motion for new trial which denied him the opportunity to have the admission of the interview video considered on appeal.

Trial Counsel also testified at the post-conviction hearing. She testified that she met with the Petitioner and reviewed all the discovery with him prior to trial. She also testified that she filed six motions in limine including one to "prohibit the State from playing those portions of the [interview] tape." She explained:

Our position was that it was, the clips that the State wanted to play . . . were taken out of context.

During the statement that [the Petitioner] made to the police, he was discussing several different robberies and several different occasions, and it was unclear that, our position was that is was unclear what the statements that the State was wishing to play, if he was actually, in fact, discussing this particular robbery.

Regarding the hotel surveillance video, Trial Counsel testified that, "We never had a video. My understanding from the State and from the discovery materials was that the video tape that they had did not show, it was not the correct time, did not show anything. So we weren't provided with that."

Finally, Trial Counsel testified that the motion for new trial was filed "a couple of days late" but that she could not remember whether any issues on appeal were denied as a result of the late filing.

Following the hearing, the post-conviction court entered a written order denying relief. Regarding Trial Counsel's failure to prevent introduction of the interview video, the post-

conviction court found that "the trial court heard and ruled on at least six (6) pre-trial motions. There are plausible strategic explanations for trial counsel's decisions to file or refrain from filing certain pretrial motions." The post-conviction court concluded that "the [P]etitioner has failed to prove this allegation by clear and convincing evidence and has not shown prejudice from the allegation; therefore the [P]etitioner is not entitled to relief on this issue." The post-conviction court did not address the surveillance video.

Regarding Trial Counsel's untimely filing of a motion for new trial, and the resulting waiver of the interview video issue, the post-conviction court found that,

> although the issue was waived on appeal, it was properly admitted at trial. Further, the defendant has not shown a reasonable probability that but for counsel's untimely motion for new trial, which in turn resulted in a waiver of the above-mentioned issue on appeal, the result of the proceeding would have been different. The petitioner has failed to prove this allegation by clear and convincing evidence and has not shown prejudice from the allegation, therefore the petitioner is not entitled to relief on this issue.

The Petitioner timely appealed from the post-conviction court's order denying relief. In his appeal, the Petitioner argues that the post-conviction court erred in denying his petition for post-conviction relief because Trial Counsel: (1) "failed to ensure the state's production of the crime scene surveillance video," (2) "failed to adequately challenge the introduction into evidence of [the Petitioner's] video statement," and (3) failed to file a timely motion for new trial, which denied the Petitioner "a right to have the issue preserved and presented to this Honorable Court for review to determine whether the trial court made a proper ruling based on the law and facts."

**Standard of Review**

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006); see also Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual

-6-

issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

## Analysis

### *Ineffective Assistance of Trial Counsel*

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel at trial.[2] Both the United States Supreme Court and the Tennessee Supreme Court have recognized that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act. See Tenn. Code Ann. § 40-30-103; Pylant, 263 S.W.3d at 868.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. See Strickland, 466 U.S. at 687; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The petitioner's failure to establish either prong is fatal to his or her claim of ineffective assistance of counsel. Goad, 938 S.W.2d at 370. Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong. Id.

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688). Our supreme court has explained that:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence.

---

[2] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment to the United States Constitution. See Gideon v. Wainwright, 372 U.S. 335, 342 (1963); State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993).

Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

Baxter, 523 S.W.2d at 934-35 (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974)).  When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006)  (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689).  We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result.  Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991).  We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." Pylant, 263 S.W.3d at 869 (citing State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999)).  "A reasonable probability of being found guilty of a lesser charge . . . satisfies the second prong of Strickland." Id.

The Petitioner first contends that Trial Counsel's performance was deficient because she "failed to ensure the state's production of the crime scene surveillance video." At trial, Detective Ball testified that the surveillance video was collected and taken to the "Tech Support Unit" of the Nashville Metropolitan Police Department but that "the robbery was not captured on the video."  Detective Ball did not know "whether we had the wrong video or it just didn't capture it."  Because of this, the surveillance video never was turned into the property and evidence room.  During the post-conviction hearing, Trial Counsel testified that her understanding was that the surveillance video was "not the correct time" and therefore "did not show anything."

Although the Petitioner testified about the surveillance video, he did not proffer the video at the post-conviction hearing. In the context of a post-conviction petition, this Court has said that "[i]t is elementary that neither a trial judge nor an appellate court can speculate or guess on the question of . . . what a witness's testimony might have been if introduced by defense counsel." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Therefore, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Id. "As a general rule, this is the only way the petitioner can establish that . . . the failure to [adduce the evidence] resulted in the denial of critical evidence which inured to the prejudice of the petitioner." Id. By analogy, we cannot speculate or guess on the question of what the surveillance video might have shown had it been introduced in the post-conviction hearing. See Hamblin v. State, No. M2012-01649-CCA-R3-PC, 2013 WL 5371230, at *7 (Tenn. Crim. App. Sep. 26, 2013). Based on the record before us, the Petitioner has not established that "but for counsel's errors the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). Therefore, the Petitioner has failed to show that he was prejudiced by Trial Counsel's failure to ensure production of the surveillance video. Because we have determined that the prejudice prong has not been satisfied, we need not address whether Trial Counsel's representation was deficient in this regard. See Goad, 938 S.W.2d at 370.

The Petitioner next contends that Trial Counsel's performance was deficient because she "failed to adequately challenge the introduction into evidence of [the Petitioner's] video statement." The record shows that Trial Counsel submitted a motion in limine to prohibit the State from playing the interview video at trial and that it was denied by the trial court. However, the record does not contain a transcript of the hearing on this motion.[3] Thus, we have no way of determining the quality of Trial Counsel's argument at the motion hearing. Moreover, the record does not contain the State's or the trial court's response to the motion in limine. Thus we have no evidence of the basis for the trial court's ruling. The Petitioner asserts that Trial Counsel's challenge was inadequate but offers no substantive argument as to how it was inadequate. Therefore, the Petitioner has not demonstrated that Trial Counsel's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Vaughn v. State, 202 S.W.3d at 116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688). Accordingly, the Petitioner has failed to establish that Trial Counsel was deficient in this regard. Because we have determined that the deficiency prong has not been satisfied, we need not address whether the Petitioner was prejudiced by the introduction of the interview video. See Goad, 938 S.W.2d at 370.

---

[3] No such transcript is contained in either the post-conviction record or the record on appeal.

The Due Process and Equal Protection clauses of Fourteenth Amendment to the United States Constitution guarantee a criminal defendant the right to representation by counsel on his first appeal. See Douglas v. People of State of Cal., 372 U.S. 353, 358 (1986); Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995). As with trial counsel, the right to representation of appellate counsel also "necessarily includes the right to effective assistance of counsel." Campbell, 904 S.W.2d at 596 (citing Evitts v. Lucey, 469 U.S.387 (1985)). The same principles apply in determining effective assistance of both trial and appellate counsel, and a petitioner must show both deficient performance and prejudice. Id. That is, a petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was unreasonable in failing to adequately pursue or preserve a particular issue on appeal and that absent counsel's deficient performance there was a reasonable probability that the issue "would have affected the result of the appeal." Campbell, 904 S.W.2d at 597; see also Carpenter v. State, 126 S.W.3d 879, 886-88 (Tenn. 2004).

However, in some cases, "counsel's performance is so deficient that it becomes presumptively prejudicial." Wallace v. State, 121 S.W.3d 652, 657 (Tenn. 2003) (citing United States v. Cronic, 466 U.S. 648 (1984)). That is, "when 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing,' the process becomes 'presumptively unreliable' and proof of actual prejudice is not required." Id. (quoting Cronic, 466 U.S. at 659). Our supreme court has held that counsel's failure to file a timely motion for new trial constitutes "abandonment . . . at such a critical stage of the proceedings" and results in "the failure to preserve and pursue the available post-trial remedies and the complete failure to subject the State to the adversarial appellate process." Id. at 658. Such a failure is, therefore, "presumptively prejudicial." Id. The court, however, "declin[ed] to adopt a *per se* rule regarding a trial counsel's failure to file a motion for new trial," and, instead, articulated a specific test: "[A] petitioner in a post-conviction proceeding must establish that he or she intended to file a motion for new trial and that but for the deficient representation of counsel, a motion for new trial would have been filed raising issues in addition to sufficiency of the evidence." Id. at 659.

A motion for new trial must be filed within thirty days of the date the order of sentence was entered. Tenn R. Crim. P. 33(b). This Court previously determined that the motion for new trial in the Petitioner's case was filed late. See Abdi, 2011 WL 2570404 at *4.[4] In spite of this late filing, the record reflects that the trial court heard the motion and denied it. The Petitioner subsequently appealed. Concluding that the motion for new trial was untimely, this Court on direct appeal held that the Petitioner had "waived his argument that the trial

_____

[4] We are bound by this prior determination in the direct appeal.

-10-

court erred by admitting video of his interview with police" and declined to consider the issue. Id.

In the instant post-conviction proceeding, the post-conviction court found that the Petitioner "has not shown a reasonable probability that but for counsel's untimely motion for new trial, which in turn resulted in a waiver of the above-mentioned issue on appeal, the result of the proceeding would have been different." Accordingly, the post-conviction court denied relief because the Petitioner failed to establish prejudice. However, the post-conviction court denied relief based on an *actual* prejudice analysis, rather than the *presumed* prejudice analysis required by our supreme court in Wallace. See Wallace, 121 S.W.3d at 656-58.

We hold that Trial Counsel's failure to file a timely motion for new trial constituted deficient performance. See Wallace, 121 S.W.3d at 657 (holding that "counsel's failure to file a timely motion for new trial . . . was deficient"); Ricky Lynn Earls v. State, No. M2003-3011-CCA-R3-PC, 2005 WL 901142, at *5 (Tenn. Crim. App. Apr. 19, 2005) ("[W]e have no hesitation in agreeing with the trial court that Counsel's failure to file timely a motion for new trial on behalf of the Defendant was deficient performance.") Because the untimely motion for new trial resulted in the failure to "preserve and pursue" the Petitioner's challenge to admission of the interview video on direct appeal, and because the resulting waiver constituted the "failure to subject the State to the adversarial appellate process," the Petitioner presumptively was prejudiced by Trial Counsel's deficient performance. See Wallace, 121 S.W.3d at 658. Therefore, we hold that Wallace mandates that the proper analysis in the instant case is the presumed prejudice analysis of Wallace, rather than an actual prejudice analysis.

Because a motion for new trial and an appeal in fact were filed raising the issue of the admission of the interview video, it is apparent from the record that the Petitioner "intended to file a motion for new trial, and that but for the deficient representation of counsel, a motion for new trial would have been filed raising issues in addition to sufficiency of the evidence." Wallace, 121 S.W.3d at 659; see also Michael Morani v. State, No. E200501897CCAR3PC, 2006 WL 1815072, at *5 (Tenn. Crim. App. June 30, 2006). Therefore, we conclude that the Wallace factors have been satisfied and that the appropriate remedy is to grant the Petitioner a delayed appeal. See Tenn. Code Ann. § 40-30-113(a) (2006); Wallace, 121 S.W.3d at 656; Timothy Turner v. State, No. M2008-00372-CCA-R3-PC, 2009 WL 1175116, at *5 (Tenn. Crim. App. May 1, 2009); Terry Lynn Byington v. State, No. E2006-01712-CCA-R3-PC, 2007 WL 4167812, at *4-5 (Tenn. Crim. App. Nov. 26, 2007).

Rule 28 of the Tennessee Rules of the Supreme Court allows either a trial court or this Court to grant a delayed appeal and provides that, when a petitioner appeals a post-conviction court's denial of a delayed appeal, this Court shall "resolve this issue along with any other issues raised in the post-conviction appeal." Tenn. R. Sup.Ct. R. 28, § 9(D)(2)(a).[5] Accordingly, based upon the presumptive prejudice of Trial Counsel's failure to file a timely motion for new trial, the Petitioner is entitled to post-conviction relief in the form of a delayed appeal.

## CONCLUSION

For the reasons set forth above, we conclude that the Petitioner failed to establish ineffective assistance of counsel resulting from Trial Counsel's failure to compel the production of the crime scene surveillance video or from her failure to adequately challenge the admission of video clips of his interview with police. We affirm the judgment of the post-conviction court denying relief in the form of a new trial on those bases.

We, however, conclude that the Petitioner is entitled to post-conviction relief in the form of a delayed appeal resulting from Trial Counsel's failure to file a timely motion for new trial. Accordingly, we reverse the judgment of the post-conviction court denying relief on that basis and remand this case to the post-conviction court for that court to enter an order allowing the Petitioner to file a new motion for new trial. Thereafter, the Petitioner shall be permitted to file a delayed appeal.

_____
JEFFREY S. BIVINS, JUDGE

---

[5] Rule 28 further states that, "[s]hould the Court of Criminal Appeals grant a delayed appeal, the post-conviction appeal shall not be stayed; instead any party may challenge the decision of the Court of Criminal Appeals, or any portion thereof, by filing an application for permission to appeal pursuant to Rule 11, Tennessee Rules of Appellate Procedure." Tenn. R. Sup.Ct. R. 28, § 9(D)(2)(a). See also Turner, 2009 WL 1175116, at *5.